# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THEODORE ROOSEVELT CONSERVATION PARTNERSHIP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DIRK KEMPTHORNE, in his official capacity as the Secretary of the United States Department of the Interior, and THE UNITED STATES BUREAU OF LAND MANAGEMENT | ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| QUESTAR MARKET RESOURCES, INC. 1050 17th Street, Suite 500 Denver, CO 80265, | ) ) ) ) |
| SHELL ROCKY MOUNTAIN PRODUCTION LLC 4582 S. Ulster Street Parkway, Suite 500 Denver, CO 80237 | ) ) ) ) |
| and ULTRA RESOURCES, INC. 304 Inverness Way South, Suite 295 Englewood, CO 80112-5825 | ) ) ) ) |
| Applicant Defendants-Intervenors. | ) |

Civil Action No. 1:08-cv-01047-RJL

---

## QUESTAR MARKET RESOURCES, INC., SHELL ROCKY MOUNTAIN PRODUCTION LLC, AND ULTRA RESOURCES, INC.'S MOTION TO INTERVENE

---

Pursuant to Fed. R. Civ. P. 24(a)(2) and Local Rule 7(j) of this Court, Questar Market

Resources, Inc., Shell Rocky Mountain Production LLC, and Ultra Resources, Inc. (the

"Operators") seek to intervene of right.  The Operators seek to defend against Theodore

Roosevelt Conservation Partnership's ("TRCP") challenge to the Bureau of Land Management's

("BLM") implementation of the adaptive management mitigation approach in BLM's July 2000

Record of Decision ("ROD") for the Pinedale Anticline Oil and Gas Exploration and

Development Project (the "Project").

The Operators are natural gas producers that own and operate federal leases in the

Pinedale Anticline Project Area ("PAPA").  The PAPA ROD authorized BLM to permit the

Operators and other leaseholders to drill up to 700 wells.  The Operators have received and

continue to receive authorizations for permits to drill ("APDs") from BLM pursuant to the PAPA

ROD.  TRCP requests that the Court enjoin further development pursuant to the PAPA ROD.

The requested injunction would impair the Operators' property interest in their federal leases and

the Operator's ability to develop natural gas resources in the PAPA.  Further, the Operators'

interests in this action differ from those of the Government, and the Government cannot

adequately represent the Operators.  These circumstances warrant the Operators' full

participation as defendants.  Alternatively, the Court should allow the Operators permissive

intervention under Fed. R. Civ. P. 24(b).[1]

## Factual Background

The Operators hold property interests in federal leases in the PAPA.  *See* Affidavits of

J.P. Matheny, ¶ 3, John Bickley, ¶ 2, and W.R. Picquet, ¶ 2, attached as Exs. A, B, and C.  In

2000, BLM completed an Environmental Impact Statement ("EIS") analyzing the environmental

---

[1]  Pursuant to LCvR 7(m), counsel for the Operators has conferred with counsel for plaintiff and counsel for the United States.  Plaintiff does not oppose this motion.  The United States does not take a position.

effects of drilling gas wells from up to 700 producing well pads in the PAPA on existing federal leases owned by the Operators and other companies with oil and gas leases in the PAPA. Authorization of natural gas exploration and development activities is subject to the conditions of approval and mitigation requirements in the ROD. PAPA ROD, at 14-24; Appx. A. Big game and sage-grouse mitigation measures include seasonal restrictions on surface disturbing activity, subject to exception, in winter habitat. *Id*. at 19.

Pursuant to the PAPA ROD, the Operators have applied for and received APDs to develop gas under existing federal leases in the PAPA. *See* Matheny Aff. ¶ 3, Bickley Aff. ¶ 2, Picquet Aff. ¶ 2. The Operators have complied with all site-specific conditions of approval and other mitigation requirements imposed by the BLM in granting the Operators' APDs. In limited circumstances, the Operators have applied for and been granted exceptions to wildlife winter drilling restrictions pursuant to the PAPA ROD. *See, e.g.,* Decision Record and Environmental Assessment for the Operators' Year-Round Drilling Proposal (Nov. 2004), *available at* http://www.blm.gov/wy/st/en/info/NEPA/pfodocs/questar.html. The Operators have pending applications for additional oil and gas development in the PAPA. *See* Matheny Aff. ¶ 4, Bickley Aff. ¶ 3, Picquet Aff. ¶ 3.

On June 27, 2008, BLM issued a supplemental EIS for the PAPA. *See* Final SEIS for the Pinedale Anticline Oil and Gas Exploration and Development Project, *available at*, http://www.blm.gov/wy/st/en/info/NEPA/pfodocs/anticline/seis.html. The final SEIS addresses impacts to all natural resources in the PAPA, including wildlife, of directionally drilling an additional 4,399 wells, though the original limit of 700 well pads in the 2000 PAPA ROD would not be exceeded. When BLM issues its ROD for the SEIS, it will supplant the 2000 PAPA ROD

and govern all future well approvals.  Until the ROD is signed, however, APDs will be permitted under the existing 2000 ROD, the implementation of which has been challenged in this litigation.

On June 18, 2008, eight years after BLM issued the PAPA ROD, TRCP filed its Complaint.  TRCP alleges that the BLM failed to comply with the National Environmental Procedure Act ("NEPA") and the Federal Land Policy and Management Act ("FLPMA") by failing to implement the adaptive management mitigation approach adopted in the PAPA ROD. TRCP asks the Court to enjoin BLM from authorizing any further development on the PAPA until BLM implements a plan to mitigate impacts to wildlife allegedly incurred as a result of the failure of the adaptive management plan.

## <u>Statement of Points and Authorities</u>

### I.    The Operators May Intervene In This Action as of Right.

Federal Rule of Civil Procedure 24(a)(2) provides for intervention of right.  Rule 24(a)(2) states in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2).  Intervention of right has four requirements:  (1) timeliness; (2) cognizable interest; (3) impairment of interest; and (4) lack of adequate representation.  *Jones v. Prince George's County, Md.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) ("*Fund for Animals*") (citation omitted).

**A.      The Operators' Application For Intervention Is Timely.**

The trial court should determine the timeliness of an intervention application in light of

all of the circumstances surrounding the case, *Natural Resources Defense Council v. Costle*, 561

F.2d 904, 907 (D.C. Cir. 1977) ("*NRDC*") (citing *NAACP v. New York*, 413 U.S. 345, 366, 93

S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973)), "especially the amount of time elapsed since the suit

was filed, the purpose of intervention, the need to preserve the applicant's rights, and the

probability of prejudice to existing parties."  *People for the Ethical Treatment of Animals v.*

*Babbitt*, 151 F.R.D. 6, (D.D.C. 1993) ("*PETA*") (citing *United States v. American Tel. & Tel.*

*Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)).  In particular, this Court looks to "the purpose for

which intervention is sought . . . and the improbability of prejudice to those already in the case."

*Hodgson v. United Mine Workers of America*, 473 F.2d 118, 129 (D.C. Cir. 1972).

In this case, Plaintiff filed its Complaint on June 18, 2008.  This Motion for Intervention

was filed only a month later.  The Government has not yet answered the Complaint, and the

Court has yet to set the schedule for filing of the administrative record, briefing, or hearing in

this case.  The Operators' intervention will not prejudice the existing parties or delay the

proceedings because the Operators intend to comply with all scheduling items set or to be set in

this case.  The fact that Plaintiffs do not oppose the Motion to Intervene and that the Government

has not taken a position also indicates that the parties will not be prejudiced by the intervention.

**B.      The Operators Have A Cognizable Interest In This Action.**

The D.C. Circuit's approach to "determining whether a potential intervenor as of right

satisfies the 'interest' requirement under Rule 24(a)(2) has been to look to the 'practical

consequences' of denying intervention, rather than to 'revert to a narrow formulation that interest

means a specific legal or equitable interest in the chose.' " *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 105 F.R.D. 106, 110 (D.D.C. 1985) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). The "interest test" is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse*, 385 F.2d at 700; *see also PETA*, 151 F.R.D. at 8 ("[T]his requirement is primarily a test for judicial economy and fairness in litigation.").

Moreover, in the environmental context, it is not appropriate to restrict the "interest" at stake to government defendants, on the basis that only the government can comply with the statute. *Friends of Animals v. Kempthorne*, 452 F.Supp.2d 64, 69 (D.D.C. 2006) ("*Friends of Animals*") (rejecting narrow construction of Rule 24(a)(2) in NEPA context and allowing hunting organizations to intervene in suit challenging the exclusion of certain species of antelope from the ESA's prohibitions). Rather, the D.C. Circuit has held that "proposed intervenors of right 'need only an interest' in the litigation—not a 'cause of action' or 'permission to sue.'" *Id.* (quoting *Jones*, 348 F.3d at 1018). "Indeed, this Circuit observed that 'the Supreme Court concluded that the lack of a cause of action does not, in and of itself, bar a party from intervening.' " *Id*. (quoting *Jones*, 348 F.3d at 1018).

The Operators meet this standard. The Operators, as leaseholders with pending APDs and plans for future development on the PAPA, satisfy the "interest" requirement. *See, e.g.*, *County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 46 (D.D.C. 2007) (holding Colorado Cattleman's Association and other intervenors had interest in the land that would be affected by reversal of the Fish and Wildlife Service's decision not to list the Gunnison sage-grouse); *S. Utah Wilderness v. Norton*, 2002 WL 32617198, *5 (D.D.C. June 28, 2002) ("*SUWA*")

(unpublished disposition) (concluding that oil and gas lessee had requisite interest to intervene as of right in action alleging BLM failed to comply with NEPA in allowing the lease sales); *Wilderness Soc'y v. Babbitt*, 104 F.Supp.2d 10, 18 (D.D.C. 2000) (allowing State of Alaska and native corporation to intervene as defendants without limitation in NEPA enforcement action challenging decision to commence oil and gas leasing in the National Petroleum Reserve in Alaska).

Further, Plaintiff's Complaint specifically challenges BLM's approval of winter drilling on the Questar's leases as violating the PAPA ROD's adaptive management mitigation requirements. Complaint, ¶¶ 57-58. Approval of future development and continued exercise of the Operators' property right to develop their gas leases in the PAPA are threatened by Plaintiff's lawsuit and requested injunction.

The Operators' full participation will also promote judicial economy—*i.e.*, the purpose behind intervention of right. If the Operators are permitted to intervene in this action, they will not need to file a separate lawsuit to protect their property interests, and the Operators can significantly contribute to the Court's understanding of the administrative record and adaptive management approaches implemented by BLM and the Operators to respond to resource impacts. The Operators' significant, direct, and legally protectable property interest in continued development of their leases on the PAPA supports intervention of right.

### C.    Without Intervention, The Disposition of This Action Will Impede the Operators From Protecting Their Interests.

The Operators need only show that the disposition of this action "may as a practical matter impair or impede [the Operators'] ability to protect [their] interests." Fed. R. Civ. P. 24(a)(2). Courts in the D.C. Circuit look to the "practical consequences" of denying

intervention, even where the possibility of future challenges to the outcome of the lawsuit remain an available option for the intervenor.  *Fund for Animals*, 322 F.3d at 735 (citing *NRDC*, 561 F.2d at 909).

An adverse ruling on BLM's compliance with NEPA or FLPMA in implementation of the mitigation measures required in the PAPA ROD could impair or impede the Operators' ability to protect their interest in developing their natural gas leases; such a determination could lead to a suspension, delay, revocation, or modification of the Operators' operations.  *See SUWA*, 2002 WL 32617198, *5 (finding petroleum company met the impaired-interest requirement because plaintiffs requested injunctive relief requiring the rescission of leases held by company until the BLM complied with NEPA); *see also Friends of Animals*, 452 F.Supp.2d at 70 (finding that costs, delays, and uncertainties associated with denial of intervention constituted an impaired interest).

Additionally, as described above and in the attached affidavits, Plaintiff's request for injunctive relief presents a danger to the Operators' substantial investment in developing their leases.  *See* Matheny Aff. ¶ 5, Bickley Aff. ¶ , 4 Picquet Aff. ¶ 4.  This threat constitutes an impaired interest.  *See Fund for Animals*, 322 F.3d at 735 (finding that loss of revenues during any interim period satisfied impaired-interest requirement) (citing *Mova Pharm.*, 140 F.3d at 1076 (holding that danger of loss of market share due to denial of a preliminary injunction satisfied Rule 24(a)(2)'s third factor)).  Moreover, if this Court denies intervention, the Operators may be forced to bring a separate lawsuit to challenge any outcome of this lawsuit adverse to their property interest in their leases.  A decision in favor of TRCP, as a practical matter, would prejudice the Operators' ability to protect their interest in development of their leases.

Accordingly, the Operators have satisfied the impairment requirement for intervention as of right.

### D.    The Existing Parties Do Not Adequately Represent the Operators' Interests.

To satisfy Rule 24(a)(2)'s fourth requirement, an applicant need show only that representation may be inadequate.  This burden is "minimal."  *NRDC*, 561 F.2d at 911 (citing *Trbovich*, 404 U.S. at 538 n.10, 92 S.Ct. at 636).  Merely because the Operators and the Government share a common goal in defending BLM's implementation of mitigation measures in the PAPA ROD, "does not mean that their particular interests coincide so that representation by the agency alone is justified."  *American Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001).  The BLM's obligation "is to represent the interests of the American people," while the Operators' interest is in protecting their right to continued development of oil and gas under their particular federal leases.  *Friends of Animals*, 452 F. Supp. 2d at 70 (quoting *Fund for Animals*, 322 F.3d at 736)).  For this reason, the D.C. Circuit has concluded that "governmental entities do not adequately represent the interests of aspiring intevenors."  *Id*.

In this case, BLM cannot adequately represent the Operators' interests.  *See, e.g., County of San Miguel*, 244 F.R.D. at 48 (holding common interest of intervenors and Fish and Wildlife Service in upholding Gunnison sage-grouse listing determination did not guarantee adequate representation); *SUWA*, 2002 WL 32617198, *5 (finding petroleum company met its "minimal burden" that BLM may not satisfactorily represent its specific interests or economic concerns in federal lease challenged under NEPA).

**II.      The Operators Have Article III Standing To Participate In These Proceedings.**

        As required under *Southern Christian Leadership Conference v. Kelley*, 747 F.2d 777

(D.C. Cir. 1984), the Operators also have standing under Article III of the United States

Constitution to participate in this action.  To establish constitutional standing, a prospective

intervenor must show:  (1) the applicant suffered an injury-in-fact, "defined as harm that is

concrete and actual or imminent, not conjectural or hypothetical;" (2) the injury is "fairly

traceable to the governmental conduct alleged;" and (3) " it [is] likely that the requested relief

will redress the alleged injury."  *Friends of Animals*, 452 F.Supp.2d at 68; *Mountain States Legal

Found. v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996).  It follows that, "when a party seeks to

intervene as a defendant to uphold what the government has done, it [must] establish that it will

be injured in fact by the setting aside of the government's action it seeks to defend, that this

injury will have been caused by that invalidation, and the injury would be prevented if the

government action is upheld."  *American Horse Prot. Ass'n*, 200 F.R.D. at 156.

**A.      The Operators Will Suffer Harm to a Legally-Protected Interest if TRCP's
        Requested Relief is Granted.**

        The Operators are in imminent danger of suffering injury in fact—an adverse ruling on

BLM's compliance with NEPA and FLPMA and an injunction preventing future development

until prior impacts to wildlife are mitigated could lead to a suspension of drilling activity on the

Operators' leases.

**B.      The Requested Relief Will Cause the Operators' Injury.**

        A direct causal relationship exists between a favorable decision to TRCP and the

Operators' injury.  But for TRCP's NEPA and FLPMA claims and request that the BLM cease

authorization of future development on the PAPA, the Operators could proceed to request

authorizations under the PAPA ROD and continue to drill and complete wells, as is their right under their leases. *See Mountain States Legal Found.*, 92 F.3d at 1232 (decision to curtail timber harvesting in national forest would sufficiently injure timber company's economic interests to support constitutional standing of company to challenge decision). Further, significant potential exists that a decision that BLM has failed to properly implement its adaptive management plan will lead BLM to impose more exacting requirements for monitoring and mitigation upon the Operators' operations when approved. *See American Horse Prot. Ass'n*, 200 F.R.D. at 157. This consideration is not "hypothetical; surely, plaintiff did not bring this lawsuit to lessen the demands on [the Operators]." *Id*.

### C.    The Injury Is Capable of Redress

If the Court denies TRCP's requested relief—an injunction against future development in the PAPA—the Operators will not be injured.

## III.    Alternatively, The Court Should Grant the Operators Permissive Intervention.

In the alternative, the Operators should be allowed to intervene permissively in this action under Federal Rule of Civil Procedure 24(b), which provides in relevant part:

> Upon timely application, anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common.

Fed.R.Civ.P. 24(b)(2). In the D.C. Circuit, permissive intervention depends on three factors: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) ("*EEOC*"). "Additionally, a court 'shall consider whether the requested intervention will

unduly delay or prejudice the adjudication of the rights of the original parties.'" *Friends of Animals*, 2452 F. Supp. 2d at 68 (quoting Fed.R.Civ.P. 24(b)).

**A.      This Court Has Subject Matter Jurisdiction Over the Operators' Claims and Defenses to the NEPA and FLPMA Action.**

The Operators' intervention satisfies the independent grounds requirement because all of the Operators' interests arise from TRCP's federal NEPA and FLPMA claims.  "Requiring an independent basis for jurisdiction makes sense in cases involving permissive intervention, because the typical movant asks the district court to adjudicate an additional claim on the merits." *EEOC*, 146 F.3d at 1046.  In this case, however, the Operators are not asking the Court to adjudicate any additional claim.  In fact, all of the Operators' claims and defenses in this case relate to the allegations in support of the NEPA and FLPMA causes of action.  Because this Court has federal jurisdiction over NEPA and FLPMA claims, and because the Operators seek intervention only to defend the NEPA and FLPMA actions, the Operators meet this requirement. *See, e.g., Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007) (holding developer had established grounds for subject matter jurisdiction by intervening as defendant in Clean Water Act and Endangered Species Act action).

**B.      The Motion Is Timely.**

As described above, given the early stage of this litigation and the Operators' intent to comply with all scheduling orders issued by the Court, the Operators' participation will not prejudice the original parties.

**C.    The Operators' Claims And Defenses Share Common Facts And Law With The NEPA and FLPMA Action.**

All of the Operators' claims relate directly to the factual allegations and legal conclusions supporting the NEPA and FLPMA action. *See Sierra Club v. Van Antwerp*, 523 F. Supp. 2d at 10 (finding commonality where intervenor presented defenses to "the precise claims brought by plaintiffs"). Therefore, the Operators' intervention satisfies the commonality requirement.

<u>Conclusion</u>

The Court should grant the Operators' motion to intervene as of right as defendants for all claims asserted by TCRP pursuant to Fed. R. Civ. P. 24(a)(2). In the alternative, the Operators should be granted permissive intervention pursuant to Fed. R. Civ. P. 24(b)(2).

DATED this 15th day of July, 2008.

Respectfully submitted,

<u>s/ John F. Shepherd</u>
John F. Shepherd, P.C. (D.C. Bar No. 358838)
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Post Office Box 8749
Denver, Colorado 80201-8749
Phone: (303) 295-8309
Fax: (303) 713-6296
jshepherd@hollandhart.com

Hadassah M. Reimer
HOLLAND & HART LLP
25 S. Willow St., Suite 200
Post Office Box 68
Jackson, WY 83001
Phone: (307) 739-9741
Fax: (307) 739-8175
hmreimer@hollandhart.com

**ATTORNEYS FOR DEFENDANTS-INTERVENORS APPLICANTS**

# Certificate of Service

I hereby certify that on this 15th day of July, 2008, I caused to be mailed, first class,

postage prepaid, the original and one true and correct copy of the foregoing **QUESTAR**

**MARKET RESOURCES, INC., SHELL ROCKY MOUNTAIN PRODUCTION LLC,**

**AND ULTRA RESOURCES, INC.'S MOTION TO INTERVENE** to:

Donald D. Blankenau
Tom Wilmoth
Husch Blackwell Sanders LLP
206 South 13th Street, Suite 1400
Lincoln, NE 68508
Don.Blankenau@huschblackwell.com

Hon. Ronald Tempas
Assistant Attorney General
Environmental & Natural Resource Division\
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530

Mr. Jack Haugrud, Esq.
Chief, Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Ben Franklin Station
Washington, DC 20044-0663

_s/ Julia Cross Lingtsang_
Julia Cross Lingtsang

3890706_2.DOC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THEODORE ROOSEVELT CONSERVATION PARTNERSHIP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DIRK KEMPTHORNE, in his official capacity as the Secretary of the United States Department of the Interior, and THE UNITED STATES BUREAU OF LAND MANAGEMENT, | ) Civil Action No. 1:08-cv-01047-RJL |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| QUESTAR MARKET RESOURCES, INC., SHELL ROCKY MOUNTAIN PRODUCTION LLC, and ULTRA RESOURCES, INC. | ) |
| | ) |
| Applicant Defendants-Intervenors. | ) |

---

### AFFIDAVIT OF J.P. MATHENY IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS

---

I, J.P. Matheny, having been duly sworn, state as follows:

1. I am a Vice President for Questar Market Resources, Inc. ("QMR"). In that capacity, I am responsible for Questar Exploration and Production Company ("QEP") assets located in the Rocky Mountain region. QEP and Wexpro are wholly-owned subsidiaries of QMR (collectively, "Questar"). The statements that I make in this Affidavit are based on my personal knowledge and facts known to me as a Vice President.

2. In my position as Vice President, I have oversight responsibility for and knowledge of Questar's leasehold interests and operations in the Pinedale Anticline Project Area ("PAPA") in southwestern Wyoming. I have held this position since 2005, and prior to this position I served as Regional Manager for the Rocky Mountain region for QEP.



EXHIBIT

A

3.  Questar holds numerous federal oil and gas leases in the PAPA.  Questar is drilling wells and conducting development and production operations on its federal leases pursuant to the 2000 PAPA Record of Decision.  Questar is the designated operator on approximately 18,894 acres in the PAPA, and Questar currently operates over 270 producing wells in this area.  Questar currently operates nine drilling rigs in the PAPA, and the company plans further development of its federal oil and gas leases in the PAPA.

4.  Questar is one of the applicants for additional oil and gas development in the PAPA currently under review by BLM and for which a Final Supplemental EIS was issued on June 27, 2008.

5.  If the BLM is required to suspend authorization of further development in the PAPA, as requested in the Complaint, Questar's substantial investments and property interest in developing its federal mineral leases will be impaired.

6.  The PAPA is estimated to be the nation's second largest natural gas field according to proven gas reserves.

Dated this _11ᵗʰ_ day of July, 2008.

_____
J.P. Matheny

STATE OF COLORADO        )
                         ) ss.
COUNTY OF DENVER         )

I, _JANET E. FLANIGAN_ , a Notary Public, do hereby certify that on this _11ᵗʰ_ day of July, 2008, J.P. Matheny personally appeared before me, who, being first duly sworn by me, declared that he read and signed the foregoing Affidavit and that the statements therein contained are true.

In witness whereof, I have hereunto set my hand and seal this _11ᵗʰ_ day of July, 2008.

_____
NOTARY PUBLIC

My Commission Expires:

7-24-2010

My Commission Expires 7/24/2010                    2

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THEODORE ROOSEVELT CONSERVATION PARTNERSHIP, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| DIRK KEMPTHORNE, in his official capacity as the Secretary of the United States Department of the Interior, and THE UNITED STATES BUREAU OF LAND MANAGEMENT, | ) ) ) ) ) | Civil Action No. 1:08-cv-01047-RJL |
| Defendants, | ) ) ) | |
| and | ) ) | |
| QUESTAR MARKET RESOURCES, INC., SHELL ROCKY MOUNTAIN PRODUCTION LLC, and ULTRA RESOURCES, INC. | ) ) ) ) | |
| Applicant Defendants-Intervenors. | ) ) | |

## AFFIDAVIT OF JOHN A. BICKLEY

I, John A. Bickley, having been duly sworn, state as follows:

1. I am the Pinedale Field Development Manager for Shell Exploration and Production Inc. As Field Development Manager, I have personal knowledge of Shell Rocky Mountain Production LLC's ("SRMP") leasehold interests and operations in the Pinedale Anticline Project Area (PAPA) of southwest Wyoming.

2. SRMP holds numerous federal oil and gas leases in the PAPA. SRMP has been drilling wells and conducting development and production operations on its federal leases pursuant to the 2000 PAPA Record of Decision. SRMP currently operates over 270 producing wells in the PAPA.

3. SRMP is one of the applicants for approval of additional oil and gas development in the PAPA currently under review by BLM and for which a Supplemental EIS was issued on June 28, 2008.



EXHIBIT

B

4.  If the BLM is required to suspend authorization of further development in the PAPA, as requested in the Complaint, SRMP's substantial investments and property interest in its federal mineral leases will be impaired.

5.  The PAPA is one of the Nation's most prolific natural gas fields.

Dated this 15th day of July, 2008.

_____
John A. Bickley

STATE OF [ _Colorado_ ]          )
                                 )ss.
COUNTY OF _____              )

I, _Darla S. Hooker_, a Notary Public, do hereby certify that on this _15th_ day of July, 2008, John A. Bickley personally appeared before me, who, being first duly sworn by me, declared that he read and signed the foregoing Affidavit and that the statements therein contained are true.

In witness whereof, I have hereunto set my hand and seal this _15th_ day of July, 2008.

_____
NOTARY PUBLIC

My Commission Expires:  _8/30/2010_

3895321_1.DOC

DARLA S HOOKER
Notary Public
State of Colorado

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

THEODORE ROOSEVELT CONSERVATION )
PARTNERSHIP, )
                         )
        Plaintiff, )
                         )
    v. )
                         )
DIRK KEMPTHORNE, in his official capacity )
as the Secretary of the United States Department )
of the Interior, and THE UNITED STATES )     Civil Action No. 1:08-cv-01047-RJL
BUREAU OF LAND MANAGEMENT, )
                         )
       Defendants, )
                         )
    and )
                         )
QUESTAR MARKET RESOURCES, INC., )
SHELL ROCKY MOUNTAIN PRODUCTION )
LLC, and ULTRA RESOURCES, INC. )
                         )
       Applicant Defendants- )
       Intervenors. )

---

## AFFIDAVIT OF W. R. PICQUET IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS

---

I, W. R. Picquet, having been duly sworn, state as follows:

1. I am Vice President - Operations for Ultra Resources, Inc. In that position, I have personal knowledge of Ultra Resources, Inc.'s oil and gas development operations in the Pinedale Anticline Project Area (PAPA) of southwest Wyoming.

2. Ultra Resources, Inc. holds numerous federal oil and gas leases in the PAPA. Ultra Resources, Inc. has been drilling wells and conducting development and production operations on its federal leases pursuant to the 2000 PAPA Record of Decision. Ultra Resources, Inc. currently operates over 300 producing wells in the PAPA.

3. Ultra Resources, Inc. is one of the applicants for approval of additional oil and gas development in the PAPA currently under review by BLM and for which a Supplemental EIS was issued on June 28, 2008.



EXHIBIT
C

4.  If the BLM is required to suspend authorization of further development in the PAPA, as requested in the Complaint, Ultra Resources, Inc.'s substantial investments and property interest in developing its federal mineral leases will be impaired.

5.  The PAPA is one of the Nation's most prolific natural gas fields.

Dated this 15th day of July, 2008.

_W. R. Picquet_
W. R. Picquet

STATE OF COLORADO      )
                                              )ss.
COUNTY OF DOUGLAS   )


I, _Nicki Smaldone_, a Notary Public, do hereby certify that on this _15TH_ day of July, 2008, W. R. Picquet personally appeared before me, who, being first duly sworn by me, declared that he read and signed the foregoing Affidavit and that the statements therein contained are true.

In witness whereof, I have hereunto set my hand and seal this _15TH_ day of July, 2008.

_Nicki M. Smaldone_
NOTARY PUBLIC

My Commission Expires:

3895321_1.DOC



NOTARY PUBLIC
NICKI M. SMALDONE
STATE OF COLORADO

My Commission Expires April 10, 2010

2

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THEODORE ROOSEVELT CONSERVATION PARTNERSHIP, <br><br> Plaintiff, <br><br> v. <br><br> DIRK KEMPTHORNE, in his official capacity as the Secretary of the United States Department of the Interior, and THE UNITED STATES BUREAU OF LAND MANAGEMENT <br><br> Defendants, <br><br> and <br><br> QUESTAR MARKET RESOURCES, INC., SHELL ROCKY MOUNTAIN PRODUCTION LLC, and ULTRA RESOURCES, INC. <br><br> Applicant Defendants-Intervenors. | Civil Action No. 1:08-cv-01047-RJL |

## PROPOSED ANSWER OF INTERVENORS QUESTAR MARKET RESOURCES, INC., SHELL ROCKY MOUNTAIN PRODUCTION LLC AND ULTRA RESOURCES, INC.

Applicants for Intervention, Questar Market Resources, Inc., Shell Rocky Mountain Production LLC, and Ultra Resources, Inc. ("Defendants-Intervenors"), answer the allegations of the Complaint as follows.  The numbered paragraphs below correspond to the numbered paragraphs of the Complaint.

## INTRODUCTION AND OVERVIEW OF CLAIMS

1.      Paragraph 1 contains Plaintiff's description of the nature of this action and thus requires no response.  The requirements in the Pinedale Anticline Project Area Record of Decision ("PAPA ROD") speak for themselves.  To the extent a response is required, Defendants-Intervenors deny the allegations in Paragraph 1.

2.      Defendants-Intervenors admit that the PAPA contains approximately 198,000 acres of predominantly federal lands, and that it also contains state and private lands.  Defendants-Intervenors also admit that the PAPA supports populations of sage grouse, mule deer, and other wildlife species.  Defendants-Intervenors deny the remaining allegations of Paragraph 2.

3.      The PAPA ROD is the best evidence of its content.  All other allegations in Paragraph 3 are denied.

4.      Denied.

5.      The standards of review set forth in the Administrative Procedure Act ("APA") speak for themselves.  Defendants-Intervenors deny that BLM has violated the APA, or that the APA authorizes judicial review of Plaintiff's claims.

## JURISDICTION AND VENUE

6.      Defendants-Intervenors admit that this Court has subject matter jurisdiction over this action.  Defendants-Intervenors deny all other allegations in Paragraph 6.

7.      Defendants-Intervenors admit that Rule 65 provides for injunctive relief in appropriate circumstances, but deny that such relief is appropriate here.

8.      Defendants-Intervenors admit that venue is proper in this Court, though for the convenience of the parties and in the interest of justice, the case should be transferred to the District of Wyoming.  28 U.S.C. § 1404(a).  Defendants-Intervenors admit that Secretary Kempthorne and BLM are headquartered in Washington, D.C.  On information and belief, Defendants-Intervenors admit that Plaintiff maintains a corporate office in Washington, D.C.  All other allegations in Paragraph 8 are denied.

## **PARTIES**

9.      Defendants-Intervenors have insufficient information or knowledge to either admit or deny the allegations in Paragraph 9, and therefore deny the allegations.

10.     Defendants-Intervenors have insufficient information or knowledge to either admit or deny the allegations in Paragraph 10, and therefore deny the allegations.

11.     Defendants-Intervenors have insufficient information or knowledge to either admit or deny the allegations in Paragraph 11, and therefore deny the allegations.

12.     The studies cited in Paragraph 12 are the best evidence of their content.  All other allegations are denied.

13.     The studies cited in Paragraph 13 are the best evidence of their content.  All other allegations are denied.

14.     Denied.

15.     Admitted.

16.     The allegations in Paragraph 16 are admitted, except that Defendants-Intervenors deny that BLM failed to implement Adaptive Environmental Management as required by the ROD.

## LEGAL BACKGROUND

17.     The allegations in Paragraph 17 are legal conclusions to which no response is required.  The language of the National Environmental Policy Act ("NEPA") speaks for itself.

18.     The allegations in Paragraph 18 are legal conclusions to which no response is required.  The language of the quoted court decisions speak for themselves.

19.     The allegations in Paragraph 19 are legal conclusions to which no response is required.  The language of NEPA speaks for itself.

20.     The allegations in Paragraph 20 are legal conclusions to which no response is required.  The language of the quoted court decisions speak for themselves.

21.     The content of the Council on Environmental Quality's ("CEQ") NEPA regulations speak for themselves.

22.     The allegations in Paragraph 22 are legal conclusions to which no response is required.  The content of the CEQ's NEPA regulations speak for themselves.

23.     The allegations in Paragraph 23 are legal conclusions to which no response is required.  The content of the CEQ's NEPA regulations speak for themselves.

24.     The allegations in Paragraph 24 are legal conclusions to which no response is required.  The content of the CEQ's NEPA regulations speak for themselves.

25.     The quoted language in Paragraph 25 is from a 1988 version of BLM's NEPA Handbook.  A new Handbook was issued in January 2008.  Thus, Defendants-Intervenors deny the allegations in Paragraph 25.

26.     The allegations in Paragraph 26 are legal conclusions to which no response is required.  The language of the Federal Land Policy and Management Act ("FLPMA") speaks for itself.

27.     The allegations in Paragraph 27 are legal conclusions to which no response is required.  BLM's oil and gas regulations speak for themselves.

28.     The allegations in Paragraph 28 are legal conclusions to which no response is required.  BLM's oil and gas regulations speak for themselves.

## **FACTUAL BACKGROUND**

29.     The Pinedale Draft Environmental Impact Statement ("DEIS"), published in 1999, speaks for itself.

30.     The Pinedale DEIS speaks for itself.

31.     The Pinedale DEIS speaks for itself.

32.     The Pinedale DEIS speaks for itself.

33.     The Pinedale DEIS speaks for itself.

34.     The Pinedale DEIS speaks for itself.

35.     The PAPA ROD, issued in 2000, speaks for itself.

36.     The PAPA ROD speaks for itself.

37.     The Pinedale Final Environmental Impact Statement ("FEIS") speaks for itself.

38.     The Pinedale FEIS speaks for itself.

39.     The Pinedale FEIS speaks for itself.

40.     The Pinedale FEIS speaks for itself.

41.     The Pinedale FEIS speaks for itself.

42.     The Pinedale FEIS speaks for itself.

43.     The Pinedale FEIS speaks for itself.

44.     The Pinedale FEIS speaks for itself.

45.     The Pinedale FEIS speaks for itself.

46.     The Pinedale FEIS speaks for itself.

47.     The Pinedale FEIS speaks for itself.

48.     The Pinedale FEIS speaks for itself.

49.     The Pinedale FEIS speaks for itself.

50.     The Pinedale FEIS speaks for itself.

51.     The Pinedale FEIS speaks for itself.

52.     The Pinedale FEIS speaks for itself.

53.     The Pinedale FEIS speaks for itself.

54.     Defendants-Intervenors admit that the PAWG was challenged, but deny that it did not perform as anticipated.  All other allegations in Paragraph 54 are denied.

55.     Defendants-Intervenors admit that drilling authorized by the ROD began after completion of the ROD and that approving the PAWG membership took time.  All other allegations in Paragraph 55 are denied.

56.     Defendants-Intervenors deny that the PAWG held its first meeting in August 2004.  The first meeting was July 12, 2004.  All other allegations in Paragraph 56 are denied.

57.     Defendants-Intervenors admit that Questar was granted an exception to winter drilling restrictions in 2004.  The Questar Year-Round Drilling Proposal Environmental Assessment is the best evidence of its content.  All other allegations in Paragraph 57 are denied.

58.     Defendants-Intervenors admit that BLM approved the Questar proposal based on an environmental study in accordance with NEPA, and deny all other allegations in Paragraph 58.

59.     Defendants-Intervenors admit when the PAWG convened in 2004, the task groups conducted analytical work and made recommendations to the PAWG, which then decided what recommendations to transmit to BLM.  Defendants-Intervenors deny the remaining allegations in Paragraph 59.

60.     Denied.

61.     Defendants-Intervenors have insufficient information or knowledge to either admit or deny the allegations in Paragraph 61, and therefore deny those allegations.

62.     Defendants-Intervenors admit that BLM met with the PAWG in August 2005 and discussed the PAWG charter but deny Plaintiff's characterization of the meeting.  All other allegations are in Paragraph 62 are denied.

63.     Admitted.

64.     Defendants-Intervenors admit the Wildlife Monitoring Task Group transmitted to PAWG two recommendations regarding mule deer in November 2005, which the PAWG transmitted to BLM.  Defendants-Intervenors deny the second and third sentences of Paragraph 64.

65.     Defendants-Intervenors admit that BLM approved an addendum to the Questar Year-Round Drilling Proposal in response to the national call for increased gas production after Hurricanes Katrina and Rita disrupted gas production in the Gulf of Mexico

66.     Defendants-Intervenors have insufficient information or knowledge to either admit or deny the first sentence of Paragraph 66, and therefore deny those allegations.  However, Defendants-Intervenors state that the PAWG met in April 2006.  All other allegations in Paragraph 66 are denied.

67.     The May 27, 2008 letter from previous PAWG members is the best evidence of its content.  To the extent a response is required, Defendants-Intervenors deny the allegations in Paragraph 67.

68.    Defendants-Intervenors admit that the PAWG was rechartered in the summer of 2006, and deny the remaining allegations of Paragraph 68.

69.    Denied.

70.    Defendants-Intervenors have insufficient information or knowledge to either admit or deny the allegations in Paragraph 70, and therefore deny those allegations.

71.    Defendants-Intervenors have insufficient information or knowledge to either admit or deny the allegations in Paragraph 71, and therefore deny those allegations.

72.    Defendants-Intervenors have insufficient information or knowledge to either admit or deny the allegations in Paragraph 72, and therefore deny those allegations.

73.    Defendants-Intervenors admit that BLM is currently soliciting nominations for individuals to serve on the PAWG, and deny the remaining allegations of Paragraph 73.

74.    Defendants-Intervenors  have insufficient information or knowledge to either admit or deny the allegations in Paragraph 74, and therefore deny those allegations.

75.    Denied.  Entities overseeing monitoring, evaluation or adjustment of oil and gas drilling procedures include the Bureau of Land Management, the Fish and Wildlife Service, Wyoming Game and Fish Department, Wyoming Department of Environmental Quality, and Wyoming Oil and Gas Conservation Commission.

76.    The Department of the Interior's Technical Guide on Adaptive Management speaks for itself.  Defendants-Intervenors deny the last sentence of Paragraph 76.

77.    Admitted.

78.    The Revised Draft Supplemental EIS speaks for itself.  On June 27, 2008, BLM issued its Final Supplemental EIS, which supersedes the draft.

79.    Defendants-Intervenors deny Plaintiff's characterization of the Draft Supplemental EIS.  The Revised Draft Supplemental EIS speaks for itself.

80.    Defendants-Intervenors deny the allegations of the first two sentences, admit that the BLM determined that the proposed action could cause significant impacts (which is why a Supplemental EIS was prepared), and states that the Final SEIS has addressed air quality impacts.

81.    The Revised Draft Supplemental EIS speaks for itself.  Defendants-Intervenors deny the characterization of the "reduced role" of PAWG and the wildlife monitoring group.

82.    The Revised Draft Supplemental EIS speaks for itself.  The Final SEIS states that potential impacts vary by alternative.  *See* Final SEIS, Executive Summary, at 6.

83.    The Revised Draft Supplemental EIS speaks for itself.

84.    The Revised Draft Supplemental EIS speaks for itself.

85.    The Revised Draft Supplemental EIS speaks for itself.  On June 27, 2008, BLM issued its Final Revised Supplemental EIS, which supersedes the draft.

86.    Defendants-Intervenors deny Plaintiff's characterization of the Draft Supplemental EIS.  The Draft Supplemental EIS speaks for itself.

87.    Defendants-Intervenors deny Plaintiff's characterization of the Draft Supplemental EIS.  The Draft Supplemental EIS speaks for itself.

88.    Denied.

## CLAIMS FOR RELIEF

### *Count One – NEPA*

89.    Defendants-Intervenors restate and incorporate by reference their responses to Paragraphs 1 through 88 of the Complaint as if fully set forth herein.

90.    The CEQ's NEPA regulations speak for themselves.  Defendants-Intervenors deny that BLM has violated any CEQ NEPA regulations.

91.    Denied.

92.    Denied.

93.    Denied.

94.    Denied.

### *Count Two – FLPMA*

95.    Defendants-Intervenors restate and incorporate by reference their responses to Paragraph 1 through 94 of the Complaint as if fully set forth herein.

96.    FLPMA speaks for itself.  Defendant-Intervenors deny that any provision of FLPMA has been violated.

97.    Denied.

98.    Denied.

99.   Denied.

100.  Denied.

101.  Any allegation in Paragraphs 1-100 not specifically admitted are hereby denied.

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a claim upon which relief can be granted.

2.     The Plaintiff's claims should be dismissed as moot.

3.     Plaintiff's claims are barred by the doctrines of laches and estoppel.

4.     Plaintiff's failed to exhaust administrative remedies.

5.     The Administrative Procedure Act does not authorize review of Plaintiff's claims.

6.     Defendants-Intervenors reserve the right to assert additional defenses as they become known between the time of filing this Answer and trial.

## PRAYER FOR RELIEF

WHEREFORE, Defendants-Intervenors Questar Market Resources, Inc., Shell Rocky Mountain Production LLC, and Ultra Resources, Inc. pray for judgment as follows:

1.     Plaintiff's claims be dismissed with prejudice.

2.     For such other relief that this Court may deem just and proper.

DATED this 15th day of July, 2008.


Respectfully submitted,

*s/ John F. Shepherd*
John F. Shepherd, P.C. (D.C. Bar No. 358838)
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Post Office Box 8749
Denver, Colorado  80201-8749
Phone: (303) 295-8309
Fax: (303) 713-6296
jshepherd@hollandhart.com

Hadassah M. Reimer
HOLLAND & HART LLP
25 S. Willow St., Suite 200
Post Office Box 68
Jackson, WY  83001
Phone: (307) 739-9741
Fax: (307) 739-8175
hmreimer@hollandhart.com


**ATTORNEYS FOR DEFENDANTS-INTERVENORS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July, I caused to be mailed, first class, postage prepaid, a copy of the foregoing **PROPOSED ANSWER OF INTERVENORS QUESTAR, SHELL AND ULTRA** to:

Donald D. Blankenau
Husch Blackwell Sanders LLP
206 South 13th Street, Suite 1400
Lincoln, NE 68508

Hon. Ronald Tempas
Assistant Attorney General
Environmental & Natural Resource Division\
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530

Mr. Jack Haugrud, Esq.
Chief, Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Ben Franklin Station
Washington, DC 20044-0663

_s/ Julia Cross Lingtsang_
Julia Cross Lingtsang

3894814_3.DOC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THEODORE ROOSEVELT CONSERVATION PARTNERSHIP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DIRK KEMPTHORNE, in his official capacity as the Secretary of the United States Department of the Interior, and THE UNITED STATES BUREAU OF LAND MANAGEMENT | ) ) ) ) ) | |
| Defendants, | ) ) | Civil Action No. 1:08-cv-01047-RJL |
| and | ) ) | |
| QUESTAR MARKET RESOURCES, INC., SHELL ROCKY MOUNTAIN PRODUCTION LLC, and ULTRA RESOURCES, INC., | ) ) ) ) | |
| Applicant Defendants-Intervenors. | ) ) | |

## ORDER GRANTING QUESTAR MARKET RESOURCES, INC., SHELL ROCKY MOUNTAIN PRODUCTION LLC, AND ULTRA RESOURCES, INC.'S MOTION TO INTERVENE AS DEFENDANTS

THIS MATTER comes before the Court on Questar Market Resources, Inc., Shell Rocky Mountain Production LLC, and Ultra Resources, Inc.'s (the "Operators") Motion to Intervene as Defendants.  The Court, having reviewed and carefully considered the motion, and being otherwise fully advised, FINDS and ORDERS as follows:

### BACKGROUND FACTS

1.      The Operators are natural gas producers and operators, that hold federal leases in the Pinedale Anticline Project Area ("PAPA").

2.      In 2000, the Bureau of Land Management ("BLM") issued a Final Environmental Impact Statement ("EIS") and Record of Decision ("ROD") authorizing the approval of natural gas wells on up to 700 well pads in the PAPA.  Authorization of natural gas exploration and development activities is subject to the conditions of approval and mitigation requirements in the ROD.  PAPA ROD, at 14-24; Appx. A.

3.      Pursuant to the 2000 ROD, BLM has authorized the Operators to drill gas wells in the PAPA.  The Operators have additional applications for development pending with the BLM under the 2000 PAPA ROD.

4.      On June 18, 2008, Plaintiff, Theodore Roosevelt Conservation Partnership ("TRCP"), filed its Complaint.  TRCP alleges that the BLM failed to comply with the National Environmental Procedure Act ("NEPA") and the Federal Land Policy and Management Act ("FLPMA") by failing to implement the adaptive management mitigation approach adopted in the PAPA ROD.  TRCP asks the Court to enjoin BLM from authorizing any further development on the PAPA, including the Operators' development, until BLM implements a plan to mitigate impacts to wildlife.

5.      The Operators have moved to intervene as a defendant in this action.

### THE OPERATORS ARE ENTITLED TO INTERVENTION AS OF RIGHT

6.      Federal Rule of Civil Procedure 24(a)(2) provides:

> Upon timely application anyone shall be permitted to intervene in
> an action . . . when the applicant claims an interest relating to the

property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2).  Intervention of right has four requirements:  (1) timeliness; (2) cognizable interest; (3) impairment of interest; and (4) lack of adequate representation.  *Jones v. Prince George's County, Md.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).

7.      First, the Operators' motion to intervene is timely.  Plaintiff filed its Complaint on June 18, 2008.  This Motion for Intervention was filed only a month later.  The Government has not yet answered the Complaint, and the Court has yet to set the schedule for filing of the administrative record, briefing, or hearing in this case.  The Operators' intervention will not prejudice the existing parties or delay the proceedings.  Therefore, the Operators' motion is timely.

8.      Second, the Operators, as leaseholders with pending plans for future development on the PAPA, satisfy the "interest" requirement.  *See, e.g.*,  *County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 46 (D.D.C. 2007) (holding Colorado Cattleman's Association and other intervenors had interest in the land that would be affected by reversal of the Fish and Wildlife Service's decision not to list the Gunnison sage-grouse); *S. Utah Wilderness v. Norton*, 2002 WL 32617198, *5 (D.D.C. June 28, 2002) ("*SUWA*") (unpublished disposition) (concluding that oil and gas lessee had requisite interest to intervene as of right in action alleging BLM failed to comply with NEPA in allowing the lease sales).

9.      Third, an adverse ruling on BLM's compliance with NEPA or FLPMA and the grant of an injunction against further development may as a practical matter impair or impede the Operators' ability to protect their interest in developing their natural gas leases.  *Fund for Animals*, 322 F.3d at 735.

10.     Fourth, BLM does not adequately represent the Operators' individualized interests.  To satisfy Rule 24(a)(2)'s fourth requirement, an applicant need show only that representation may be inadequate.  This burden is "minimal."  *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977).  The D.C. Circuit has concluded that "governmental entities do not adequately represent the interests of aspiring intevenors."  *Friends of Animals v. Kempthorne*, 452 F.Supp.2d 64, 70 (D.D.C. 2006).  BLM's general interest in defending its implementation of the adaptive management plan and compliance with NEPA and FLPMA on behalf of numerous operators in the PAPA is distinct from the Operators' individual need to protect their property and business interest in development their leases.  *See, e.g., County of San Miguel*, 244 F.R.D. at 48 (holding common interest of intervenors and Fish and Wildlife Service in upholding Gunnison sage-grouse listing determination did not guarantee adequate representation).

11.     The Operators have Article III standing.  To establish constitutional standing, a prospective intervenor must show:  (1) the applicant suffered an injury-in-fact, "defined as harm that is concrete and actual or imminent, not conjectural or hypothetical;" (2) the injury is "fairly traceable to the governmental conduct alleged;" and (3) " it [is] likely that the requested relief will redress the alleged injury."  *Friends of Animals*, 452 F.Supp.2d at 68.

12.     First, the Operators are in imminent danger of suffering injury in fact—an adverse ruling on BLM's compliance with NEPA and FLPMA and an injunction preventing future development until prior impacts to wildlife are mitigated could lead to a suspension of drilling activity on the Operators' leases.

13.     Second, a direct causal relationship exists between a favorable decision to TRCP and the Operators' injury.  But for TRCP's NEPA and FLPMA claims and request that the BLM cease authorization of future development on the PAPA, the Operators could proceed to request authorizations under the PAPA ROD and continue to drill and complete wells, as is their right under their leases.

14.     Third, if the Court denies TRCP's requested relief—an injunction against future development in the PAPA—the Operators will not be injured.

## IN THE ALTERNATIVE, THE OPERATORS ARE GRANTED PERMISSIVE INTERVENTION

15.     Federal Rule of Civil Procedure 24(b) provides in relevant part:

> Upon timely application, anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common.

Fed.R.Civ.P. 24(b)(2).  In the D.C. Circuit, permissive intervention depends on three factors: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) ("*EEOC*").

16.     The Operators' intervention satisfies the independent grounds requirement because all of the Operators' interests arise from TRCP's federal NEPA and FLPMA claims.

*See, e.g., Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007) (holding developer had established grounds for subject matter jurisdiction by intervening as defendant in Clean Water Act and Endangered Species Act action).

17.   Given the early stage of this litigation and the Operators' intent to comply with all scheduling orders issued by the Court, the Operators' participation is timely and will not prejudice the original parties.

18.   The Operators' intervention satisfies the commonality requirement because all of the Operators' claims relate directly to the factual allegations and legal conclusions supporting the NEPA and FLPMA action.  *See Sierra Club v. Van Antwerp*, 523 F. Supp. 2d at 10 (finding commonality where intervenor presented defenses to "the precise claims brought by plaintiffs"). Therefore,

IT IS HEREBY ORDERED that Questar Market Resources, Inc., Shell Rocky Mountain Production LLC, and Ultra Resources, Inc.'s Motion to Intervene as Defendants is GRANTED.

DATED this _____ day of _____, 2008.

_____
The Honorable Richard J. Leon
United States District Court Judge, District of
Columbia

3890705_2.DOC